## Case No. 16,076.

UNITED STATES v. POTTER et al.

[7 Reporter, 675;[1] 25 Int. Rev. Rec. 138, 186; 11 Chi. Leg. News, 256.]

Circuit Court, D. Minnesota. 1879.

FEDERAL OFFICERS—APPOINTMENT OF AGENTS BY HEADS OF DEPARTMENTS—WITHHOLDING SALARY—PAYMENT OF WARRANTS.

1. The head of a department of the federal government is authorized, in the administration of the duties of his office, to employ agents, and to determine when an exigency arises demanding their employment.

2. Section 1766, Rev. St., authorizing the salary of an officer in arrears to be withheld, forms no part of the contract with the sureties of such officer. Nor do sections 300, 307, 308, Rev. St., in relation to the payment of warrants after three years from issuance, form any part of such contract.

[This is an action on an official bond dated August 4, 1871, by Potter, as disbursing agent of the United States at Pembina. He retired from the office June 30, 1874. The principal item in controversy was a charge against Potter of $1,500, a draft for which sum was transmitted to him May 17, 1871, to cover disbursements for the quarter ending June 30, 1871, the facts concerning which sufficiently appear in the opinion of the court. It was contended on the part of the defendant, McIlrath, who was surety on Potter's bond, that he is not liable for this sum, on the grounds that there is no statutory authority for the appointment of disbursing agents, or for their giving bonds; that Potter's wrongful acts, if any, and the government's loss, occurred after the retirement of Potter from office; that the payment by the government of the money covered by the draft more than three years after its date was irregular and unlawful; and that, after Potter was known by the accounting officers of the treasury to be in default to the amount of the draft, they continued several years, contrary to the provisions of section 1766 of the Revised Statutes, to pay him his salary and commissions to an amount in the aggregate greater than that claimed by the government.][2]

W. W. Billsen, for the Government.
Geo. L. & Chas. E. Otis, for McIlrath.

NELSON, District Judge. The head of a department of the government is authorized in the administration of the duties of the office to employ agents and determine when an exigency arises demanding their employment. The law of 1854 (Rev. St. § 3614) recognizes the right and provides for a bond to be given by the agent for the faithful discharge of his duties. The act of March 3, 1849 (Rev. St. § 3617), required payment of all moneys received by Potter into the treasury "without abatement or reduction," and it became a necessity to appoint him a disbursing agent. He was appointed an agent for payment of salaries, commissions, incidental and other expenses of his office as receiver, and that of the office of register for the Pembina land district, so called. He made, on April 6, 1871, an estimate for salaries, fees, and commissions for the quarter ending June 30, 1871, in the sum of $1,500, and a treasury warrant dated May 17, 1871, was forwarded him. He received the warrant, did not pay commissions out of the moneys called for, never returned it, but charged himself in his report to the government with the amount, and on July 1, 1874, after his term of office expired, by indorsement passed it out of his control. His sureties are liable for government moneys received during his term of office, and his neglect to account for and pay over is a breach of trust and a failure "faithfully to execute and discharge the duties of his office," which was guarantied by them. Section 1766, Rev. St. U. S., authorizing the salary of an officer in arrears to be withheld, forms no part of the contract with the sureties. This statute was passed to secure and protect the government, and insure punctuality on the part of public officers, and although it in strong language inhibits the payment of salaries to any person in arrears, yet if an unauthorized payment is made by the proper officer, whose duty it is to pass upon and allow salaries, the government is not responsible for the misconduct of such officer, and the sureties are not discharged on that account. [U. S. v. Van Zandt] 11 Wheat. [24 U. S.] 184; [U. S. v. Curry] 6 How. [47 U. S.] 106; [Gibbons v. U. S.] 8 Wall. [75 U. S.] 274.

The certified transcript of Potter's accounts as disbursing agent shows a balance due the government, and that the warrant remitted to him during his term of office was not used in making disbursements for the government. This warrant not being presented for payment within three years after it issued, under sections 300, 307, 308, Rev. St., was subsequently paid from the moneys in the "outstanding liability account." It is charged this payment was illegal and the draft "died" in Potter's hands, and the holder at the time of payment was his agent, and the treasurer should have liquidated Potter's delinquent account by giving him credit for the return of the draft, and not paid it. I cannot agree to this view of the case. These sections, like others in respect of the duties of government officials, form no part of the contract with sureties upon an official bond. They establish the mode of payment of a class of outstanding drafts upon the treasury unpresented within the time specified, and designate, for the convenience of the government, the requisite proceedings to obtain the money and the fund out of which payment is to be made. These laws are not passed to protect sureties, but to better

secure the government. Laches is not imputable to the government. [Dox v. Postmaster-General] 1 Pet. [26 U. S.] 318; [U. S. v. Boyd] 15 Pet. [40 U. S.] 208; [U. S. v. Van Zandt] 11 Wheat. [24 U. S.] 190; [Bank of U. S. v. Dandridge] 12 Wheat. [25 U. S.] 81; [U. S. v. Nicholl] Id. 505; [U. S. v. Kirkpatrick] 9 Wheat. [22 U. S.] 720; [U. S. v. Buchanan] 8 How. [49 U. S.] 105; [Gibbons v. U. S.] 8 Wall. [75 U. S.] 274; [U. S. v. Powell] 14 Wall. [81 U. S.] 502; [Jones v. U. S.] 18 Wall. [85 U. S.] 663.

[Let judgment be entered in favor of plaintiff for the sum of $1.500. with 6 per cent. interest from August 15, 1874, with costs.[1]]

